**RECORD NO. 14-4858**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

# ANTONIO EUGENE STATEN,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

————————

**BRIEF OF APPELLANT**

————————

Denzil H. Forrester
THE LAW OFFICES
  OF DENZIL H. FORRESTER
3325 Washburn Avenue, Suite 103
Charlotte, NC  28205
(704) 632-9992

*Counsel for Appellant*

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF JURISDICTION ..............................................................1

ISSUE PRESENTED FOR REVIEW ...........................................................2

STATEMENT OF THE CASE .......................................................................2

          Pertinent Factual Events ......................................................................4

SUMMARY OF ARGUMENT ......................................................................6

ARGUMENTS ..............................................................................................7

I.      The district court abused its discretion by ruling defendant
       obstructed justice ...............................................................................7

        A.    Standard of Review ...................................................................7

        B.    Discussion .................................................................................8

            Many Contradictions In The Officers' Action ..........................8

            1.    Length of Time to Obtain the Statement is
               Indicative of Coercion .....................................................8

            2.    The Gun Was Not In Plain View ....................................10

            3.    Staten Next to Drugs ......................................................13

            4.    Officer's Executed the Search Warrant Looking
               for Drugs ........................................................................13

            General Unprofessional Behavior by the Officers ...................15

i

II.     Abuse by the District Court.................................................................15

        No Predicates Found by the Court .......................................................19

CONCLUSION ................................................................................................24

REQUEST FOR ORAL ARGUMENT ................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*Alleyne v. United States,*
  133 S. Ct. 2151 (2013)............................................................24

*Duplan Corp. v. Deering Milliken,*
  400 F. Supp. 497 (4th Cir. 1975) .....................................17

*Gall v. United States,*
  552 U.S. 38 (2007)..........................................................21

*United States v. Adams,*
  321 Fed. Appx. 449 (6th Cir. 2009) ................................7

*United States v. Alpert,*
  28 F.3d 1104 (11th Cir. 1994) .........................................7

*United States v. Burton,*
  933 F.2d 916 (11th Cir. 1991) .......................................18

*United States v. Colletti,*
  984 F.2d 1339 (3d Cir. 1992) ........................................22

*United States v. Dunnigan,*
  507 U.S. 87, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993) ............................20

*United States v. Dunnigan,*
  944 F.2d 178 (4th Cir. 1991) ..................................... 22-23

*United States v. Dunnigan,*
  950 F.2d 149 (4th Cir. 1991) .....................................7, 23

*United States v. Foster,*
  634 F.3d 243 (4th Cir. 2011) .......................................15

*United States v. Grayson,*
  438 U.S. 41 (1978)........................................................23

*United States v. Hagan,*
    913 F.2d 1278 (7th Cir. 1990) ...................................................................18

*United States v. Hassan,*
    927 F.2d 303 (7th Cir. 1991) .....................................................................23

*United States v. Hicks,*
    948 F.2d 877 (4th Cir. 1991) .....................................................................18

*United States v. Jaramillo,*
    4 F. Supp. 2d 341 (1998) ............................................................................22

*United States v. Jones,*
    308 F.3d 425 (4th Cir. 2002) .....................................................................19

*United States v. Lynn,*
    592 F.3d 572 (4th Cir. 2010) .....................................................................21

*United States v. Murray,*
    65 F.3d 1161 (4th Cir. 1995) .....................................................................21

*United States v. Perez,*
    661 F.3d 189 (4th Cir. 2011) .....................................................................19

*United States v. Quinn,*
    359 F.3d 666 (4th Cir. 2004) .....................................................................20

*United States v. Sullivan,*
    455 F.3d 248 (4th Cir. 2006) .....................................................................16

*United States v. Tucker,*
    603 F.3d 260 (4th Cir. 2010) .....................................................................21

**STATUTES:**

18 U.S.C § 922(g) ...........................................................................................19

18 U.S.C. § 924(c) ...........................................................................................2

18 U.S.C. § 924(c)(1) .......................................................................................1

18 U.S.C. § 2461(c) ................................................................2

18 U.S.C. § 3231 ....................................................................2

18 U.S.C. § 3742(a) ...............................................................2

21 U.S.C. § 841(a)(1) ..........................................................1, 2

21 U.S.C. § 841(b)(1)(c) ......................................................1, 2

28 U.S.C. § 1291 ....................................................................2

**SENTENCING GUIDELINE:**

U.S.S.G. § 3C1.1 ............................................................*passim*

**RULES:**

Fed. R. App. P. 4(b)(1)(A) ......................................................1

Fed. R. Evid. 404(b) ...............................................................3

## STATEMENT OF JURISDICTION

On August 21, 2013, a two count Bill of Indictment was filed against Antonio Eugene Staten.  On September 11, 2013, defendant had an initial appearance before Magistrate Judge David S. Cayer, in the Western District of North Carolina, Charlotte Division.  At said hearing he was advised of his rights and the charges in the Bill of Indictment.  Count One of the Bill of Indictment charged the defendant with Possession With Intent to Distribute Cocaine, in violation of Title 21 U.S.C. § 841(a)(1) and Title 21 U.S.C. § 841(b)(1)(c).  Count Two charged the defendant with Use or Carry a Firearm During and Possession of a Firearm in Furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).  The incident occurred on January 26, 2013, in Charlotte, within the Western District of North Carolina.

On or about January 23, 2014, Staten appeared before United States District Judge Max O. Cogburn, in Charlotte, North Carolina, and stood trial.  On January 24, 2014, the jury returned a verdict of guilty on Count One and not guilty on Count Two of the Bill of Indictment.  The district court entered judgment on November 3, 2014.  The Notice of Appeal was filed on November 14, 2014.  Criminal defendants are allowed fourteen calendar days after the entry of judgment to appeal pursuant to the Federal Rules of Appellate Procedure, 4(b)(1)(A).  Mr. Staten's Notice of Appeal was filed in a timely manner.  The district court has

1

jurisdiction pursuant to 18 U.S.C. § 3231. This Court's jurisdiction arises under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

**I.    The district court abused its discretion by ruling defendant obstructed justice.**

## STATEMENT OF THE CASE

On August 21, 2013, Appellant was charged by the Grand Jury for the Western District of North Carolina, in the Charlotte Division, in a Bill of Indictment with violations of 18 U.S.C. § 924(c), Count Two, and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c), Count One. Specifically, Staten was charged with Possession With Intent to Distribute Cocaine (Count One), and Use or Carry a Firearm During and Possession of a Firearm in Furtherance of a drug trafficking crime (Count Two). A Notice of Forfeiture was filed pursuant to 18 U.S.C. § 2461(c).

Staten was arraigned on September 16, 2013. On September 16, 2013, Magistrate Judge Cayer signed the Detention Order to hold Staten without bond. On October 10, 2013, a *pro se* motion for bond was filed. On October 17, 2013, an order denying the motion was entered by Magistrate Judge David Keesler, after a hearing. The magistrate court reviewed the *pro se* pleading as an Inquiry of Status as to Counsel and Motion to Substitute Counsel. On January 13, 2014, the

2

government filed a Notice of Intent to Use Evidence pursuant to Fed. R. Evid. 404(b). (JA 59)

On January 23, 2014, Staten appeared before the United States District Judge for trial on both counts of the Bill of Indictment. On the morning of January 23, 2014 a pretrial hearing was held on the Motion to Suppress Evidence. (JA 241-315) Staten and his girlfriend, Ellen Dawkins, testified at the suppression hearing. Ultimately, the district court did not find the issue as to the voluntariness of the statement by Staten suppressible. (JA 315) On January 24, 2014, Staten was found guilty by a jury to violating Count One of the Bill of Indictment. He was found not-guilty of committing the violation in Count Two. (JA 626) The Presentence Report (PSR) was published on May 28, 2014. On June 4, 2014, the government filed objections to the PSR. (JA 723) On June 13, 2014, the Department of Justice then, filed supplemental objections to its June 4th pleading. (JA 728) The defense filed objections to the PSR on June 7, 2014. (JA 725) A Final PSR was filed on July 15, 2014. A *pro se* objection was filed on June 23, 2014. The United States Probation Officer calculated Staten's offense level at 16 and his criminal history category at III, the guideline range for imprisonment for that designation is 27 to 33 months. (JA 748)

On October 9, 2014, United States District Judge Max O. Cogburn, Jr. presided over sentencing of Staten regarding his Count One conviction. At the sentencing hearing, the defendant received a guideline range sentence of 21 months on the Count One conviction, based on a total offense level of 14. That was determined after listening to arguments regarding objections to the PSR. The undisputed criminal history category remained at III. (JA 748) The sentencing court found Staten did not have an association with the firearm that was worthy of an enhancement; however, it found that his testimony at the pretrial hearing, regarding knowledge of the weapon, obstructed justice pursuant to United States Sentencing Guidelines Section 3C1.1. The district court pronounced a three-year term of Supervised Release. (JA 653) On November 3, 2014, the Judgment and Statement of Reasons were filed. On November 11, 2014, a Notice of Appeal was filed.

## **Pertinent Factual Events**

Staten was only convicted of one offense on the charging document, Count One. Though he took the witness stand at the evidentiary hearing, he did not testify at trial. (JA 289-302) Ms. Dawkins testified on Staten's behalf at the suppression hearing; she did not testify during the trial. On the witness stand, Staten denied knowledge of the weapon's use as it relates to drug trafficking. He said he signed a statement written by the officer, which is contrary to his testimony

4

at the hearing, because he was pressured by law enforcement. Ms. Dawkins accepted responsibility for the firearm. Collectively, the testimony of law enforcement was in contravention of the assertions of Staten and Ms. Dawkins.

The statement written by law enforcement and alleged to have been dictated by Staten was produced at trial. (JA 255) Although Staten claimed knowledge of and possession of the firearm, in the written statement, the jury did not find him guilty on Count Two, the only weapons charge. (JA 626)

In its closing argument the government diluted its own claim regarding Staten's association to the weapon. (JA 522) The government remained silent during the presentence process and during the sentencing hearing as to knowledge of the Charlotte-Mecklenburg Police Department's (CMPD) internal affairs investigation regarding the officers' collective testimony. (JA 647) The sentencing court felt the jury should not give with one hand and the district court take away with the other hand. (JA 641) The sentencing court felt the home at 5--- Glenview Court, Charlotte North Carolina, belonged to Ms. Dawkins; therefore the defense's objection to gun possession was sustained. (JA 640 & 679) However, the sentencing court thought Staten's "story of the officers doing A, B, C, and D was completely concocted in order to try to get out of a confession." (JA 640) The district court was not inclined to believe what it termed "all of that." (JA 640) Mr.

Staten maintained he signed the statement to protect Ellen Dawkins from going to jail. (JA 646)

On January 16, 2015, a supplement to the Presentence Report was filed pursuant to Guideline Amendment 782. (JA 761-762)

## SUMMARY OF ARGUMENT

Appellant pursued his constitutional rights and stood trial. However, he did not take the witness stand at trial. Therefore the jury did not hear from him, so he did not have direct influence in altering their verdict. That was the substantial part of the proceeding in which Mr. Staten could have impeded justice, by giving testimony. Notwithstanding he was assigned two offense level points for obstruction of justice.

Appellant did testify at the pretrial hearing in which the district court was trier of the facts. As such the district court ruled appellant concocted a story to elude a confession; something tantamount to attempting to flee from arrest or responsibility. Appellant disagrees with the sentencing judge, regarding the concoction of the story. Staten believes, this Circuit will not punish a defendant with a two-point enhancement for attempting to flee or evade arrest.

The district court was not moved by Staten's reasons for signing the document, unlike the jury. However, subsequent to the pretrial hearing and prior to pronouncing sentence the district court became aware the officers who it

6

believed had been and still were under investigation for their tactics regarding the same incident. (JA 647)  Additionally, the Department of Justice (DOJ) knew or should have known, because it had members of CMPD in the courtroom at the sentencing hearing.  However, the DOJ took no affirmative steps to alert the sentencing court of its faulty belief.

## ARGUMENTS

**I.    The district court abused its discretion by ruling defendant obstructed justice.**

A.    Standard of Review

Guidelines § 3C1.1 provides that a sentence may be enhanced by two levels "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. *United States v. Alpert*, 28 F.3d 1104, 1107 (11th Cir. 1994).

In reviewing a district court's application of the obstruction enhancement under U.S.S.G. Section 3C1.1, we review de novo the determination that specific conduct constituted obstruction of justice. *United States v. Adams*, 321 Fed. Appx. 449 (6th Cir. 2009).  However, this Circuit set the threshold to protest an enhancement at, the clearly erroneous standard of review.   *United States v. Dunningan*, 950 F.2d 149 (4th Cir. 1991).

7

B.    <u>Discussion</u>

The two-point enhancement for alleged obstruction of justice surrounds Mr. Staten's testimony at the suppression hearing. (JA 638)  In this matter, he will use the adage that action resonates louder than words to make his point.  The district court brought up the notion that defendant could have lied through his teeth. (JA 271)  This is evidence the arbiter's focus was slanted.  The district court's mindset was skewed towards looking at the coerced narrative as being a "confession."  The phrase is a conclusory jargon rather than an open-minded view of defendant's signature at the bottom of the written statement. (JA 321)   At the sentencing hearing the district court intimated it would not usurp the findings of the jury by taking away their collective assessment on the credibility of the witnesses at trial. (JA 641)   Notwithstanding the eloquent words the arbiter espoused regarding balancing what the jury gave and what a court should take away, it ruled in opposite of its own admonition. (JA 641) The following are multiple examples on why the court abused its discretion.

## **Many Contradictions In The Officers' Action**

### **1.    Length of Time to Obtain the Statement is Indicative of Coercion**

CMPD Officer Brandon Williamson testified "Mr. Staten immediately said that they were his…[a]s soon as I brought him in there to interview him." (JA 256) Officer Williamson stated the first words out of Staten's mouth, when he asked

him to have a seat, were that the cocaine was all his and that he purchased the firearm. (JA 268)  That statement took approximately 30 seconds to elicit from Staten. (JA 269)  Officer Brandon Williamson went on to testify the house was "pretty small." (JA 375)  Yet after obtaining the alleged half-minute *confession* it took close to two hours to clear the scene. (JA 269)  Officer Williamson also testified the officers' time at the residence was approximately one hour and forty minutes. (JA 257)  The officer testified he wrote the statement for Mr. Staten. (JA 254).  The officer and his colleagues seem like the ones who had to concoct a story to support the protracted time in obtaining the alleged confession.

On cross examination, at the pretrial hearing, Ms. Dawkins agreed with the government's question, it was pretty quickly after the officers arrived that she was brought into the living room. (JA 285)  Ms. Dawkins testified they took Antonio Staten into "my bedroom where they stayed for a while, for hours." (JA 278, 281 & 286)  This squarely discounts Officer Williamson's account of a short confession, that which would also borderline as an excited utterance, to a trained seasoned officer-in-charge like Williamson.  His actions demonstrate the mindset of a person who was concocting, the admission of coerced evidence based on two different avenues to get it in at trial.  Amazingly, the two other suspects were never sequestered for questioning.

9

### 2.    The Gun Was Not In Plain View

Officer Brandon Williamson testified the gun was in plain view. (JA 147) However, Officer Christopher Rains testified the TV table stand was a short table in the bedroom. (JA 484)  Ms. Dawkins testified the gun was under the TV stand. (JA 277)  Officer Chad Shingler testified the firearm was directly underneath the brown TV stand. (JA 464)  Ms. Dawkins testified Staten did not know the gun was in the house.  She also mentioned he did not live there.  Staten came that night because it was her birthday and they had a party. (JA 275-276, 283 & 290).

The gun was under the table on the floor. (JA 277)  It was not in plain view because SWAT and others missed it. (JA 284, 351, 398-399)   According to testimony, male officers threw a blanket over Ms. Dawkins until the female cop came in the bedroom. (JA 284)  This happened after SWAT got the naked Ms. Dawkins out of the bedroom closet. (JA 32, 78, 267, 276, 284, & 688)  The lady cop noticed the gun when she was dressing Ms. Dawkins. (JA 267, 277 & 293)  So for a weapon that supposedly was in plain view, none of the multiple male officers saw it.  For a weapon that was in the room with Ms. Dawkins at the time of the raid Officer Christopher Rains, has no idea of that fact. (JA 489)

Officer Chad Shingler testified SWAT officers were in the room holding up a blanket while the female behind the blanket was getting dressed. (JA 284, 463 & 472)  Officer Shingler said his job was to search the residence. (JA 462) He

initially answered he did not see the weapon. (JA 463)   However, he later discovered it and then stood by the weapon. (JA 464)  Williamson testified SWAT was first to enter and secure the residence. (JA 351)  Officer Alex Saine also said SWAT "deemed the residence secure[d]." (JA 422-423)  Officer Christopher Rains contradicted Officer Shingler by intimating he discovered the gun and notified Officer Williamson. (JA 484)  It was actually the female officer who made the discovery. (JA 277)  At another time Officer Williamson testified as thought he was the one who located the gun, the evidence he wanted to talk to Staten about. (JA 377) To believe Officers: Rains; Saine; Shingler; and Williamson, is to verify that SWAT was ineffective in their job.

It is an implausible story to accept that the special weapon's team did not secure the place and left before doing so.  This point is crucial because the district court became convinced the gun was found in plain view, when actually it was not visible to multiple officers who first entered the room.  If multiple trained professionals could not see the firearm, it was unreasonable to rule Staten misrepresented his knowledge about the weapon.  If Staten was only over for the night he likely would not have ascertained the location of a gun under a short TV stand that was concealed from multiple male officers.  Because of the couple's history of domestic violence, it is reasonable to believe Ms. Dawkins kept a gun for protection. (JA 304 & 409)  Unlike most women, she has actually been arrested

on domestic violence charges. (JA 283)  Therefore the probability of her keeping a weapon is higher than the average single woman.  It is also reasonable to believe she would not want Staten to know of the presence of the gun and still have easy access to it when needed.  They were keeping secrets from each other, at that point in their relationship. (JA 283) Concealing it in a low place, under items natural to the bedroom decor would be a great way to hide the weapon.  In bending over one may discovery things persons standing cannot.  When you get dress, it is a natural act to bend over or get down when placing items of clothing on your body.  The lady officer was helping Ms. Dawkins get dressed.  Presumably she had to retrieve items from the floor or place items on Ms. Dawkins' feet or at least start at the feet to put them on.  That is why another lady found the weapon.

The optics does not support Staten using the remote weapon to further any drug transaction with Derrick Teasley. (JA 300) Hence, the district court did not have information to buttress its ruling that, Staten fabricated the story on the witness stand to finagle out of the coerced statement he signed.  Staten contends the district court relied too much on the respective station in life of the police officers versus the status of the lay witnesses, despite the visual logistic of the crime scene.

### 3.    Staten Next to Drugs

Officers Chris Rains and Brandon Williamson attempted to convince the arbiter of the facts that Staten was next to the drugs upon entry by the police. (JA 397, 487-488). In actuality, Staten stopped in his tracks in the kitchen. (JA 292 & 300) Even Officer Williamson testified Staten was between the kitchen and living room. (JA 400) Actually, Staten was moved to the living room where Derrick. Teasley and the drugs were at, to concoct the appearance that Staten was next to the drugs. This chicanery was unnecessary because the government knew Staten had already testified, at the suppression hearing, he was snorting cocaine. (JA 291) Therefore, at the minimum Staten was locked into possession of cocaine and he could have easily been impeached if he had testified, to the contrary, at trial. Both Williamson and Shingler played around with the truth to where they suggested they would rather deceive the magistrate signing the search warrant than let SWAT know of the likelihood of a gun being present at a residence. (JA 397 & 399) Therefore, they left the district with little cover to support their credibility versus Staten's or Ms. Dawkins' believability.

### 4.    Officer's Executed the Search Warrant Looking for Drugs

The officers expected to find drugs when they raided the house. The target of their search was Antonio Staten. (JA 350) When they found a firearm they became ambitious. Their aspirations of additional serious charges lead them to

expand the responsibility of the target. Officer Williamson testified they were looking for cocaine. (JA 261) Officer Shingler testified the purpose of going in the house was for a drug-related search warrant. (JA 480) However, when they found the gun, they forced a nexus to the target. Officer Williamson was cogent that "the gun was in the bedroom and the target was in the living room. (JA 261) Officer Williamson later testified he did not see Staten in possession of a weapon nor did he see Staten uses a weapon in furtherance of drug activity. (JA 267-268) Yet law enforcement distressed Staten until he capitulated to sign a statement contrary to the visual picture at the time of police entry. Officer Williamson testified, once Staten said that the drugs and gun were his there was no reason to arrest Ms. Dawkins. The officer denied threatening to arrest Ms. Dawkins, but he had her in handcuffs until the time Staten signed the statement written by Williamson. (JA 416)

The district court clarified that the search warrant that came from the informant's information did not include looking for a gun. (JA 261) The testimony is clear; the gun was in the bedroom and the target of the search warrant, Antonio Staten, was in the living room. Specifically he was halfway between the kitchen and in the living room. (JA 261-262) The district court believed the impeached testimony of the officers and relied on an illogical version of events to find Staten and Ms. Dawkins were inaccurate. That position is contrary to the evidence.

14

## <u>General Unprofessional Behavior by the Officers</u>

Staten was at the party at on Glenview Court, in Charlotte North Carolina. (JA 422)  He was not living there at the time. (JA 290)  There were about 15 people at the party. (JA 275)  He did not know a gun was in the bedroom. (JA 291) The lay witness said, Officer Williamson threatened to charge Ellen Dawkins with the drugs if Staten did not take responsibility for the drugs and gun. (JA 294, 300) He said Staten had to cooperate.  They yelled and screamed at Staten.  Officer Williamson advised Staten that he had already waived his rights. (JA 294-295) The officer made up the reason why Staten needed a gun without understanding the details regarding which relative was killed. (JA 299 & 302)  The officer's high-fived each other. (JA 301)  Officer Williamson laughed and said we can't do anything to Ellen Dawkins regarding the gun. (JA 293-294)  A dynamic police entry into a private residence is one of the more serious missions officers can execute.  The behavior of these officers' lacked the reverence of a SWAT raid. This Circuit has a seminal case instructive on ignoring the mundane stereotyped narratives of law enforcement. *United States v. Foster*, 634 F.3d 243 (4th Cir. 2011).

## II.    Abuse by the District Court

On January 23, 2014, the district court found Staten was at least spending time if not living at Ms. Dawkins's residence. (JA 213)  However, at sentencing

15

the same court seemingly changed course and found he did not have a connection to the weapon; due to it was Ms. Dawkins's house. (JA 640)  Then the sentencing court ruled Staten concocted the defense's description of events on the day of arrest. (JA 640).

Todd Roberts of Charlotte-Mecklenburg Police Department's crime laboratory could not find biological evidence of Staten on the gun. (JA 497)  The fingerprint examiner failed to link Staten to the weapon.  Ellen Dawkins said it was her gun. (JA 278)  The district court relied on tenuous facts at the sentencing hearing, to support the two-point enhancement.  Yet those facts contradicted its findings on gun possession, made at the same hearing.  The district court was unyielding in the face of evidence in opposite of its ruling.  The enhancement must be vacated, because the sentencing court's support had not been found by a jury. *United States v. Sullivan*, 455 F.3d 248, 256 (4th Cir. 2006).

The practical effect of the sentencing court's ruling is to take away the jury's determination that the officers' story, regarding the statement signed by Staten, is void of truth.  This is ironic because if any entity should be accused of subterfuge it should be the one practicing it continuously, from arrest to sentencing.  The government should be held to a higher standard; especially in a trial where its law enforcement witnesses were not believed by the 12 people in the jury box.  The same police witnesses were taken to task by their own department's compliance

16

division, according to Staten. (JA 647)  Staten views the court's ruling on his veracity vis-à-vis the officers' as unreasonable.  First, the sentencing court's use of letters in the alphabet was vague.  Secondly, the officers impeached themselves on major points which defied visual science.

On January 23, 2014, the district court found Staten's will was not overcome by the police. (JA 314) This was after listening to compelling testimony regarding officers yelling at Staten in the bedroom and the same officer's leaving and returning to the same bedroom in the pretty small house multiple times. (JA 271 & 375)  The district court was disinclined to believe the will of a man can be overcome by the fact that his longtime girlfriend might go to jail for drugs she did not possess.  The perception of the district court is that a man would not feel a sense of moral responsibility for the fate of his lady friend.  Staten had remorse for what he had brought on to Ms. Dawkins on her birthday.  He knew the police: kicked down her door; damaged the carpet with the flash bang percussion device; and her young daughter would be evicted from the same house.  The perception of the district court is that Staten would not feel bad about the high probability of Ms. Dawkins being evicted from public housing because of his drug use. (JA 274, 291 & 307)  The district court's inability to grant the cloak of reasonableness on a defendant in that situation is abuse of discretion. *Duplan Corp. v. Deering Milliken*, 400 F. Supp. 497 (4th Cir. 1975).

17

The district court, may disagree with Staten recanting the signed coerced statement. It might have viewed Staten's action as attempting to avoid responsibility, which is tantamount to attempting to flee arrest because it is tangentially related to events occurring at the time of arrest, the alleged confession. (JA 640) However, such action by Staten was considered and addressed in the U.S.S.G. Therefore, whether stated or not, the sentencing court could not use that action as a reason for enhancement for obstruction of justice.

The commentary accompanying § 3C1.1 states plainly that avoiding or fleeing from arrest does not warrant an enhancement. U.S.S.G. § 3C1.1, comment. (n.4(d)). The Eleventh, Seventh and this Circuit have recognized that successfully avoiding arrest, alone, does not warrant an enhancement for obstruction of justice. *United States v. Burton*, 933 F.2d 916, 918 (11th Cir. 1991); Section 3C1.1 was intended to apply to something different from instinctive flight of a suspect who suddenly finds himself in the powers of the law. *United States v. Hicks*, 948 F.2d 877, 887 (4th Cir. 1991), citing *United States v. Hagan*, 913 F.2d 1278 (7th Cir. 1990). The occurrences in this matter are compatible with case law. It was law enforcement who motivated the instinctive flight, the extrication of Ms. Dawkins as *quid pro quo* for the alleged confession. The jury believed CMPD manipulated Staten's will and caused him to put his signature at the end of the statement written by Officer Williamson. At or about the time of trial, Staten had to counteract the

18

contrived confession.  In doing so he appears as the scoundrel in the perception of the district court.  Subsequently, the district court learned the whole truth.

## No Predicates Found by the Court

An additional flaw in the sentencing of Staten is the obscure reason for overruling the objection to the obstruction of justice enhancement.  The phase, doing A, B, C, and D and "all of that" is synonymous to yada yada. (JA 640)  They refer to empty words.  The difference is yada yada sounds more colloquial.  So in saying A, B, C and D, the court was being formal.  Regardless, Staten contends "the district court did not find the necessary factual predicates to impose an obstruction of justice enhancement. *United States v. Perez*, 661 F.3d 189 (4th Cir. 2011).  There are three elements necessary to impose a two-level enhancement for obstruction of justice based on the defendant's perjurious testimony:  the sentencing court must find that the defendant (1) gave false testimony; (2) concerning a material matter; (3) with willful intent to deceive.  *Perez* at 192 Citing *United States v. Jones*, 308 F.3d 425, 428 n.2 (4th Cir. 2002).  The following argument explains why Staten did not give a false statement.

The jury's verdict demonstrates the officers' veracity was in question, not the defendant's.  Officer Williamson is one of the officers the jury did not believe.  Ownership or constructive possession of the firearm is a material matter in a Title 18 U.S.C § 922(g) case.  It was not relevant in this case.  Therefore, Staten's denial

19

of knowledge, ownership or possession of the weapon was not of import in this matter. Staten had no intent to deceive because on the witness stand he took responsibility for an illegal act, the possession of controlled substances.

Not every accused who testifies at trial and is convicted will incur an enhanced sentence. *United States v. Dunnigan*, 507 U.S. 87, 96, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993). The Supreme Court's opinion in *Dunnigan* stands for the proposition that a mere statement that the defendant committed perjury is insufficient. Numerous witnesses must contradict the accused regarding many facts which cannot be explained away as mistakes. Here law enforcement's contention, regarding the gun and Staten, was impugned on cross examination. The jury spoke to that point in its verdict. At sentencing, the district court took a topsy-turvy view of the evidence and enhanced Staten.

An additional flaw in the sentencing of Staten is the obscure reason for overruling the objection to the obstruction of justice enhancement. In *United States v. Quinn*, 359 F.3d 666, 681 (4th Cir. 2004), this Circuit affirmed an obstruction of justice enhancement for perjury even though the district court did not specifically find that the false testimony was material, because the record provided sufficient explanation to permit this Court to conclude that it was. *Jones* at 193. In this matter Appellant's pretrial testimony was immaterial to the jurors' deliberation; they had no knowledge of his denial yet they acquitted Staten of

involvement in Count Two.  Additionally, the explanation by the district court is insufficient to allow this Court the ability to conduct an intelligent review of why the sentencing court ruled against Staten.

The sentencing court's made vague references to what it minimized as officers doing A, B, C, and D; and that it did not believes "all of that."  The utterances are a look into the mindset of an arbiter who did not have articulable reasons to overrule the particular objection by the defense. (JA 640)  Staten, hopes this Court will want more than a nebulous reference of empty words to substantiate the ruling by the lower court.  We review a sentence for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).  This review requires appellate consideration of both the procedural and substantive reasonableness of a sentence.  *Id., See also United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010); *United States v. Tucker*, 603 F.3d 260 (4th Cir. 2010).  When a defendant objects to an enhancement resulting from a trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of justice.  It is preferable for a district court to address each element of the alleged perjury in a separate and clear finding.  *United States v. Murray*, 65 F.3d 1161, 1165 (4th Cir. 1995).  Other than the slight pause between the letters A, B, C, and D, there was nothing separate in

addressing a reason for the sentencing court's position. Even in common parlance yada yada is not clear. As, such Staten argues for reversal of his sentence.

To warrant an upward adjustment pursuant to Section 3C1.1 "the perjury of the defendant must not only be clearly established, and supported by evidence other than the jury's having disbelieved, him, but also must be sufficiently far-reaching as to imposed some incremental burden upon the Government, either in investigation or proof, which would not have been necessary but for the perjury." *United States v. Jaramillo*, 4 F. Supp. 2d 341, 346 (1998) citing *United States v. Colletti*, 984 F.2d 1339 (3d Cir. 1992). In Staten's case the alleged perjury of defendant, that he possessed the weapon in association with drug trafficking was not clearly established. First, the court was not privy to discovery. Secondly, the jury disregarded the officers' testimony and; the jury did not hear from the defense during trial. Staten's pretrial testimony placed no incremental burden upon the government. Therefore the information formally presented to either set of arbiters, judge or jury, did not illustrate possession or usage of the firearm by Staten. The testimony in Staten's case is closer to the opposite end of the spectrum on the "clearly established" chart. Therefore the objection to obstruction of justice should have been sustained.

This Circuit has stood firm for years in its effort to grant a defendant his right to testify in his own behalf. *United States v. Dunnigan*, 944 F.2d 178 (4th Cir.

1991). The sentiment of this particular case is that, an automatic enhancement to defendants who testified would constitute an intolerable burden on a defendant's right to testify. This Court was cognizant of the potential that an obstruction enhancement would chill a defendant's right to testify. *United States v. Dunnigan*, 950 F.2d 149, 150 (4th Cir. 1991). Section 3C1.1, as an automatic enhancement for which meaningful appellate review is unavailable is antithetic to the sentencing enhancement for untruthfulness held permissible by the Supreme Court in *United States v. Grayson*, 438 U.S. 41 (1978). This guideline is not to be applied indiscriminately to every defendant who testifies and is ultimately convicted. *Id.* at 152. As to Staten the district court's application is an automatic, mechanistic enhancement over which the panel expressed concern. *Id.* at 153 citing *United States v. Hassan*, 927 F.2d 303 (7th Cir. 1991).

In this matter, the jury did not believe the officers, and then their own supervisors lost faith in them by *sua sponte* launching an internal investigation. Therefore even a believer like the district court should have taken notice at the sentencing hearing and realized that the supposition given by law enforcement was a canard. Once the false notion that the police were being truthful had been debunked, all vestiges of the benefit of their uniform and badge should have dissipated from the district court. The court might have been justified at first but in the face of the jury's verdict and the subsequent investigation it leaves the public to

23

acknowledge the unfathomable. (JA 647)    That is, these officers are not trustworthy. (JA 647)

Ultimately the jury rejected the statement signed by Staten.  Unbeknownst to the jury at the time of trial and the judge until the sentencing hearing, CMPD's internal affairs division investigated the officers. (JA 647)  So even without the pristine clarity of the totality of the circumstance, which was revealed post trial in an internal police inquiry, the jury intuitively deliberated and settled on the accurate factual basis.  Staten request this Court to grant meaning and substance to the phrase "jurors are the triers of the facts."  *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

## CONCLUSION

The defense's opportunity for any occurrence of obstruction of justice was extremely brief, relative to that of the police officers. For the reasons set forth above, the undersigned respectfully prays this Court vacates appellant's sentence and remand the case to the district court for resentencing.

## REQUEST FOR ORAL ARGUMENT

Counsel respectfully requests oral argument on behalf of the Mr. Staten.

Respectfully Submitted,


February 11, 2015


**s/Denzil H. Forrester**
Denzil H. Forrester
N.C. State Bar No. 24976
Denzil H. Forrester Attorney-at-Law
3325 Washburn Avenue, Suite 103
Charlotte, NC 28205
(704) 632-9992-v
(704) 632-9969-fx
denzilfesq@aol.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

   this brief contains <u>5,748</u> words, excluding the parts of the brief
   exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportional spaced typeface using
   <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.


Dated: February 11, 2015          <u>s/Denzil H. Forrester    </u>
                                  Denzil H. Forrester

                                  *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 11, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy E. Ray
OFFICE OF THE
  UNITED STATES ATTORNEY
United States Courthouse
100 Otis Street, Room 233
Asheville, NC  28801
(828) 271-4661

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219